Alleging that defendant is the owner and operator of "Walgreen's Drug Store," located on one of the principal business corners in the City of Alexandria, Louisiana, and that he suffered injury as a result of the gross negligence of defendant in permitting the contents of a broken bottle of baby oil to remain on the floor, plaintiff filed this suit for more than $40,000.00 in damages for personal injuries to himself.
The petition alleged that the bottle of oil was knocked to the floor by an unknown customer of defendant before plaintiff entered to make a purchase of nipples for a baby's bottle in the same department that the baby oil was situated and that the breaking of this bottle of oil was known to defendant's agents and employees for a period of fifteen minutes or more; that defendant's permitting the oil to remain on the floor constituted gross negligence and resulted in serious injury to the plaintiff when his feet slipped out from under him while he was in the act of reaching for merchandise which he expected to purchase. Plaintiff further alleged that defendant's action in displaying the oil for sale on a table where same could be easily knocked off constituted gross negligence and was one of the proximate causes of his injury.
An exception of no cause or right of action was filed and overruled.
Defendant's answer admitted that plaintiff slipped and fell in the drug store as alleged and that a bottle of baby oil had been accidently dropped at this spot by an unknown customer and set forth that when the bottle of oil was accidently dropped, the customer "immediately pushed the broken glass under the edge of the display table and immediately passed on through the aisle toward the drug department counter on the south side of the store, and that approximately at the same time said customer passed out of the aisle to the drug department side of the store, petitioner entered the store and while passing through said aisle, slipped and fell," and that the period of time which elapsed between the customer's act of dropping the oil and the slipping and falling of plaintiff was so short that it would have been impossible for the employees of defendant to have removed the oil from the floor or to have placed a guard around same.
The answer in the concluding paragraph set forth that the oil on the floor of the aisle where plaintiff was hurt was there as the result of a male customer having accidently dropped a bottle of oil on the floor at a time almost immediately prior to entrance of plaintiff to the store; that the defendant had no knowledge that the oil was on the floor until after plaintiff had fallen; that plaintiff fell within a minute or two after the bottle of oil had been dropped and that as soon as any of defendant's responsible agents had notice that the oil was on the floor, it was immediately mopped up and removed.
The learned District Judge rendered a complete written opinion, finding that the defendant company was guilty of no negligence in placing the baby oil on the display counter, and that while the evidence indicated that defendant knew of the condition and allowed it to remain for a period of approximately fifteen minutes, such a delay did not constitute actionable negligence.
Plaintiff has appealed to this Court from the District Court's judgment rejecting his demands.
The record shows that the oil was contained in the usual sort of Mennen baby package and was displayed and placed on the table in the same manner that defendant's merchandise was displayed in other portions of the state and nation. We agree with the District Court that such a display of the merchandise on the counter did not constitute negligence, and consider plaintiff's other alleged basis for recovery, namely, that the action of defendant's employees in permitting the oil to remain in the aisle and in the path of prospective customers after this condition had come to their notice, constituted actionable negligence and was the proximate cause of his injury.
Since defendant in answer admits that the oil was accidently dropped by one of its customers and that plaintiff subsequently fell at the same spot, the principal facts left in controversy are: how much time elapsed between the breaking of the bottle *Page 179 
and plaintiff's accident, and whether or not, during this time, defendant's employees had knowledge that the bottle had been broken and consequently knew of the dangerous condition of the drug store floor at the spot where the accident occurred.
The facts surrounding the breaking of the bottle of oil, the notice taken of the incident by the employees of defendant are covered in the following extract of the opinion of the learned District Judge:
"The accident occurred in the late afternoon when the store was fairly crowded with customers. It was summertime and there were several people at the soda fountain and in other parts of the store. It seems that there was little attention paid to the breaking of the bottle and the length of time that the oil remained on the floor was not very definitely fixed by the evidence. The witness Wagner was at the soda fountain. He heard the breaking of glass which, undoubtedly, was the bottle falling and breaking upon the floor and he remained there until the plaintiff slipped and fell. His testimony was to the effect that the bottle was broken on the floor approximately fifteen minutes before the plaintiff was injured. It was evident that this was an approximation as there was no reason for him to consider the length of time between the two events and did not know that he would ever be called upon to fix it. He merely judged that it was about fifteen minutes.
"At the time of the accident Miss Whatley was in the employ of the defendant company and was dispensing soft drinks at the soda fountain which was approximately fifteen feet from the aisle in which the oil had been spilled. She was standing behind the soda fountain and she said that a man and a lady entered the store and the lady picked up a box which contained the oil and a can of baby powder and that when the lady had looked at it and started to place it back on the display counter the oil was dropped, the bottle was broken and the oil spilled on the floor. She continued to dispense soda as it was a busy hour and intended to notify the others in the store about the breakage but she did not have time as she was continuing to mix the soft drinks at the fountain.
"It was her testimony that it was oil which dropped on the floor. Just how she determined that fact is not clear from the record. I was inclined to believe that she later learned it was oil and for that reason testified that she saw the lady drop the bottle of oil. However, I will take her testimony as given which was to the effect that she knew at the time that it was oil which was spilled upon the floor. She was unable to fix the time between the spilling of the oil and the accident. At first it appeared that it was during the time she was preparing one drink but when I questioned her as to how many drinks she had prepared during that time, she was unable to state and would not venture to fix the time nor the number of drinks prepared.
"The time element is important to be fixed but that can only be done approximately. I will take the testimony of Wagner in connection with that of Miss Whatley and in my opinion it could not have been more than fifteen minutes. Wagner had not left the soda fountain and neither had Miss Whatley had an opportunity to leave the fountain to go report it. I think it may reasonably be said that not over fifteen minutes elapsed.
"From the testimony it does not appear that any other employee knew that the oil had been spilled. The other employees definitely stated that they had no knowledge of the bottle being broken and especially that any of them knew that its presence upon the floor had caused the dangerous situation to exist which might result in someone slipping thereon and getting hurt. However, Mr. Armstrong, employed as a druggist by the defendant and a life-long friend of the plaintiff, stated to the plaintiff after the accident and before the plaintiff left the store that a lady had knocked the oil off the display counter and that he had told the porter to clean it up and that the porter had plenty of time to do it but had not done so. This is according to the testimony of the plaintiff. He was corroborated in this by Officer Broussard who was called in from the front of the store to assist the plaintiff. He stated that Mr. Armstrong made the statement in his presence that the bottle had been dropped on the floor and that the *Page 180 
porter had had time to clean it up. This was denied very definitely by Mr. Armstrong who had no recollection of making any such statement. However, he must have made the statement and in justice to Mr. Armstrong the reply indicated that being a very close friend of the plaintiff and seeing that he was hurt, expressed his regret and blamed the porter for not cleaning it up. However, other than this statement the evidence did not show that Armstrong or any other of the employees except Miss Whatley knew that the oil was upon the floor."
We find that the breaking of the bottle in the aisle was noted by Miss Whatley, one of defendant's employees on duty at the time of the occurrence, and that the existence of the oil and glass on the floor was also known to Mr. Armstrong, a druggist employed by defendant, for a sufficient length of time prior to plaintiff's falling for same to have been cleaned from the floor.
Defendant's manager testified that Miss Whatley's primary duty was that of a soda dispenser, but that soda dispensers sometimes worked in other portions of the store.
Plaintiff's testimony was that Mr. Armstrong, who came to assist him following his fall, told him that a lady had knocked the baby oil off the display case and that he (Armstrong) had told the Negro porter to clean it up and that he had had plenty of time to do so. This testimony was corroborated by that of a customer, Mr. Wagner, and by that of police officer Broussard, who was called in to assist plaintiff immediately after he was hurt. Officer Broussard testified as follows:
"Q. Well, did Mr. Armstrong come up? A. Immediately after I got there Mr. Armstrong came up there.
"Q. Did he make any statement or did you ask him any questions? A. I asked Mr. Ellington what happened and he said he slipped and fell and I said, where at, and he showed me the oil on the floor there and I says 'Where's the glass' and the druggist said 'Well, the porter boy picked it up' and he said he didn't know why he hadn't picked up the oil and there was a big oil spot there and I said 'How did it happen' and he spoke and said 'Some lady knocked a bottle of baby oil off on the floor and hadn't had time to get to cleaning it up.' "
Defendant's manager, Mr. Lamotte, testified that three porters were employed and that these cleaned up the drug store as often as necessary. He admitted that the presence of the baby oil on the floor "would make it slippery."
After studying the record, we find ourselves substantially in agreement with the findings of fact of our learned brother of the District Court, who concluded that approximately fifteen minutes elapsed between the time the bottle of oil was dropped on the floor by one of defendant's customers and the time plaintiff entered the store to make a purchase from the same counter.
The law applicable to the case before us was exhaustively reviewed by the Orleans Court of Appeal in the case of Boucher v. Paramount-Richard Theatres, Inc., et al., 30 So.2d 211 and in the decision of the case before us we accept the rule therein set forth, namely, that a storekeeper is not the insurer of the safety of his customers and he need only keep the floors and passageways of his premises in a reasonably safe condition and must exercise the degree of care which would be exercised by an ordinarily careful or prudent man under the same or similar circumstances.
We recognize the principle of law that the proprietor of a store is not responsible for what may occur to one customer as the result of the negligence of another customer. However, if a storekeeper or his employees have knowledge of the existence of a dangerous condition of a portion of the store in which customers are invited to use, whether same be created by an act of another customer or arise from other circumstances, and neglect to exercise reasonable diligence in remedying the dangerous situation — by a clean up, repair or by barricading same — the storekeeper thereby becomes guilty of negligence and becomes responsible for injuries that may result to one entering his premises as a customer.
As set forth in the case of Welcek et al. v. Saenger Theatres Corporation et *Page 181 
al., La. App., 5 So.2d 577, reasonable care is a relative term, varying with the situation and circumstances.
In the case before us, the record shows that the floor of defendant's store was of a hard stone or tile-like substance; that the existence of a broken bottle of baby oil on same constituted a hazard to any customer who might unsuspectedly step on the spot affected and that this condition was known to defendant's employees for approximately fifteen minutes time. The record further shows that defendant's store is on one of the main corners of the populous city of Alexandria and that hundreds of customers customarily came into the premises on Sunday afternoon. Defendant had numerous employees, including three porters whose duty it was to keep the floors clean. The bottle dropped contained five fluid ounces of baby oil. It would have been a relatively simple process to have picked up the glass and mopped up this oil. Under the circumstances, the neglect of defendant's employees to take remedial action for a quarter of an hour period constituted a failure to exercise the degree of care to be expected of an ordinarily prudent person.
Therefore, while we substantially agree with the District Court in its finding of fact, we conclude that, under the facts of the case before us, defendant failed to exercise the reasonable care required of storekeepers.
Plaintiff suffered shock and some injury to his elbow, back and lower limbs in the fall. Plaintiff since childhood has had an impediment in the use of his lower limbs, although he has always been able to earn a good livelihood and to accumulate some property. Plaintiff, at the time of his fall, was already suffering from a double hernia. Immediately after his fall on July 21st he was taken to the Baptist Hospital, where he remained until August 6th. He returned to the hospital on August 21st and on August 24th underwent an operation for correction of the double hernia condition. His principal complaint at the time of the trial was of the inconvenience caused by the possible fracture of the end bone of his vertebra. His doctor testified that an operation would probably cure this condition.
We have found it difficult to distinguish between the suffering, loss of time and medical expenses incident to the hernia operation and those resulting from plaintiff's fall, but have concluded that an award to plaintiff of $1000.00 for pain and suffering, of $1500.00 for loss of earnings, and of $750.00 for medical expenses, including cost of the corrective operation, would be fair under the circumstances disclosed by the record.
The judgment appealed from is reversed. Judgment is now rendered in favor of plaintiff, Robert W. Ellington, and against defendant, Walgreen Louisiana Company, Inc., in the sum of $3250.00, with 5% per annum interest from judicial demand until paid, and for all costs.