AYRES, Judge.
This is an action in tort wherein plaintiff, Mrs. Cynthia Frances Wiley, sought to recover from the defendant, J. Weingarten, Inc., damages allegedly sustained by plaintiff when she slipped and fell on the floor of defendant’s supermarket. This accident was precipitated by the presence of Wesson Oil on the floor of the supermarket occasioned by the breakage of two bottles of the oil dropped by another of the store’s customers.
This case was tried and decided by Judge Eugene B. Middleton, Jr., late of the First Judicial District Court in and for Caddo Parish. Predicated upon a finding that the defendant was free from fault or negligence, plaintiff’s demands were rejected. Following the rendition and signing of the judgment, a motion for a new trial was filed and was pending on November 30, 1971, when Mrs. Wiley died. Substituted as parties-plaintiff were Adie Joe Butler, William Drew Butler, and Frances Lea Butler. Walker, children, next of kin and sole heirs of Mrs. Wiley.
The motion for a new trial was subsequently tried and overruled by Judge William J. Fleniken of the First Judicial District Court since Judge Middleton had, in the meantime, passed away.
A motion by the substituted plaintiffs to continue the prosecution of this action in forma pauperis, a right under which the original plaintiff was permitted to proceed, was overruled. Thereafter, the substituted plaintiffs posted an appeal bond as ordered and thus perfected orders of appeal to this court. Nevertheless, plaintiffs, in brief, have complained of the fact they were not permitted to appeal without furnishing an appeal bond. This complaint is based upon the fact that the original plaintiff was authorized to prosecute this action in forma pauperis and that the order granting the privilege continues in effect until rescinded. LSA-C.C.P. Art. 5185.
*219 It appears to us that the privilege granted to the original plaintiff was personal to her and did not extend to the substituted plaintiffs. Moreover, as already-noted, the required appeal bond was posted, and the appeal is now properly before the court. Therefore, the question of the furnishing of bond is moot. Nevertheless, no harm or prejudice has been shown.
The important question, however, is whether the precautions immediately and subsequently taken by defendant’s employees to remove the oil and to protect the store’s customers were those that reasonably prudent persons would have taken under the circumstances.
Mrs. Doris Nichols, a clerk on duty in charge of the tobacco counter, saw the customer drop the oil upon the floor. Immediately thereafter, Mrs. Nichols came from behind the counter, tore open the large heavy bag in which the bottles had been carried, and spread it over the oil so as to absorb as much of the oil as possible and, thus, remove it from the floor. She also moved a gum cabinet, usually stationed in front of the tobacco counter or check-out stand, into a position to block the passageway of customers toward the oil on the floor. Then, returning to her position behind the counter, Mrs. Nichols immediately caused a call to be made over the public address system for a clean up in front of the tobacco counter. Gregg Ponder, a clean-up employee, no longer in defendant’s employ, not even at the time of trial, entered the store from the front and heard the call as he passed through the door. Thereupon, he, at once, went to the scene of the accident, ascertained the condition, and continued 50 to 75 feet beyond, where he obtained a bucket and a mop. Without stopping, Ponder returned and began clean-up operations which, so he stated, were completed within 10 minutes from the time he heard the call. Mrs. Wiley fell after Ponder began his clean-up operations. According to Mrs. Nichols’ testimony, Mrs. Wiley fell not more than five minutes after the oil was spilled upon the floor.
Mrs. Nichols further testified that upon returning to her station behind the counter she was not more than three or four feet from the spot where the oil was spilled; the oil was to her right as she faced the cash register; and three or four customers were in a line to her left to be waited on by her. Since the tobacco department dead-ended to Mrs. Nichols’ right, any customer coming into the department would necessarily have to pass in front of her as she stood at the register in order to reach the area where the oil was spilled. She was, therefore, in position to give those who attempted to pass warning of the condition of the floor.
When Mrs. Wiley came to the tobacco department, she first stood at the end of the line of customers, following which she was seen by Mrs. Nichols moving toward the gum cabinet, whereupon Mrs. Nichols immediately called to Mrs. Wiley and warned her of the danger created by the presence of oil on the floor. Mrs. Nichols testified to have said to Mrs. Wiley, “Lady, don’t walk up there. There has been cooking oil spilled.” Although in a position to have heard the warning, Mrs. Wiley nevertheless ignored it and proceeded around the gum rack and stepped into the oil. Mrs. Nichols again cautioned Mrs. Wiley to be careful of the oil and not to fall. Mrs. Wiley thanked her for her concern. Nonetheless, -after Mrs. Wiley purchased cigarettes, she fell as she departed from the counter.
Mrs. Jean Savage, employed as a department manager, testified that she was in the store’s cosmetic department, only six or seven feet away from where Mrs. Nichols was standing, and heard Mrs. Nichols warn a customer about the oil on the floor. As soon as she heard the warning, Mrs. Savage came to a position behind Mrs. Nichols where she saw Mrs. Wiley approach the tobacco counter. Mrs. Savage testified she heard Mrs. Nichols tell Mrs. Wiley, before she walked into the oil, to stay back because there was oil on the floor. Mrs. Wiley, she said, ignored the warning and *220 said she was not going- to slip. Thereupon, Mrs. Savage testified, Mrs. Nichols waited on Mrs. Wiley and again cautioned her to be careful. She testified, further, that Mrs. Wiley thanked Mrs. Nichols for her concern, and, as Mrs. Wiley started to back away from the counter, she saw Mrs. Wiley fall. Gregg Ponder and another whom she did not know, Mrs. Savage testified, assisted Mrs. Wiley to her feet and to a chair where she was seated.
Mrs. Nichols’ testimony with reference to the warnings given Mrs. Wiley v as further corroborated by the tesfcin ony of Gregg Ponder who testified that Mrs. Nichols told Mrs. Wiley to be careful and he heard Mrs. Wiley reply, “Thank you for your concern, but I am not going to fall.” He testified, likewise, to seeing Mrs. Wiley step back and start to fall. He was unsuccessful in his efforts to catch her because he was too far away. This witness testified that someone whom he did not know assisted in getting Mrs. Wiley up and obtained a folding chair for her to sit in.
Charles Griffith, the store manager, arrived at the scene and found Mrs. Wiley sitting in the chair. He saw the oil on the floor and estimated that about half of the oil was under the tobacco counter and the other half, in front of the counter. Although he was under the impression that Mrs. Wiley had not sustained injuries, Griffith nevertheless suggested that she be checked by Dr. Herbert H. Vaughan. An accident report was prepared and signed. The report, signed by Mrs. Wiley, contained the statement:
“Doris Nichols warned Mrs. Wiley that the oil was on the floor & she said she would not get in it & thanked her for her concern.”
Testimony given on behalf of the defendant is in many particulars contradicted by that of plaintiff and her witnesses, especially with reference to notice and warning of the presence and danger of the oil on the floor. However, in the opinion of the trial judge, with which we agree, credibility of plaintiff and her witnesses has been thoroughly and successfully attacked and discredited. For instance, Mrs. Wiley asserted, in her original petition, a claim for loss of earnings. In interrogatories, she was asked the name and address of her employer, in answer to which she gave the name and address of Schumpert Memorial Hospital. In a pretrial deposition, she again stated that as of the time of the accident she was employed by Schumpert. At the trial, Schumpert’s director of personnel appeared as a witness for plaintiff and brought with her the personnel records pertaining to plaintiff which showed that Mrs. Wiley had been discharged for excessive absenteeism on May 27, 1968, about three months prior to the accident, and that she had not worked for Schumpert thereafter. *
Mrs. Wiley’s claim that she was in good physical condition and had no back trouble at the time of the accident was likewise disproved by the records of the Confederate Memorial Medical Center. These records showed that Mrs. Wiley reported to the hospital on July 28, 1968, and disclosed that plaintiff noted an onset of pain in her back and right hip, and had suffered pain in her back continuously thereafter. The records showed that less than two weeks before the accident, Mrs. Wiley was at -Confederate Memorial Medical Center for treatment of back and hip complaints.
Moreover, four days before the accident, Mrs. Wiley reported to the Schumpert emergency room for treatment. Schum-pert Hospital records contain these entries:
“SHORT HISTORY OF THE DISEASE OR INJURY: Chest pain. Pain in right side of chest for several days. Nausea and vomiting. Has been drinking beer quite heavily.
“WORKING DIAGNOSIS: Excessive alcohol consumption.”
In her testimony, Mrs. Wiley, at first, denied that an accident report had been made or that she had signed such a report, but when shown the report she acknowledged its execution.
*221 The testimony of Mrs. Frances Walker is as incredible as that of her mother. In her pretrial deposition Mrs. Walker testified that Mrs. Wiley was working as a nurse’s aid at P. & S. Hospital and had been working there for some two or three weeks at the time of the accident. On cross-examination at the trial, Mrs. Walker admitted this testimony was false. In her deposition, this witness also testified that Mrs. Wiley had not been employed at any time since the accident. The record, however, discloses that Mrs. Wiley was employed at P. & S. Hospital in September and October of 1968. In fact, Mrs. Walker testified, under direct examination by her mother’s counsel, that her mother’s general health was excellent before the accident, whereas the records of Confederate Memorial and of Schumpert disclosed that she was in poor health.
Mrs. Walker, who had been in Germany with her husband while he was in service, and who had not seen her mother for two- and-a-half years before returning on June 22,. 1968, about six weeks before the accident, admitted, on cross-examination, that at the time she returned home she found her mother sick, whereupon she placed her in a hospital at Springhill. Two days later, however, Mrs. Wiley was transferred from Springhill to Schumpert for the treatment of “d.t.’s” (delirium tremens), where she remained until July 3, 1968. During that time the daughter was living with her mother and was obviously fully aware of her condition. Nonetheless, as heretofore stated, on direct examination, she testified under oath that her mother’s general health was fine and she had never heard her mother complain of her back or hip before the Weingarten accident. This daughter, however, was the one who took her mother to Confederate Memorial on July 28, 1968, for treatment of her ailments, two of which were, as already noted, in her back and hip.
In analyzing this testimony, we conclude, as obviously did the trial judge, that its great preponderance is in favor of defendant. The testimony of the defendant’s witnesses has not been impugned, nor has there been any reason advanced why it should not be believed.
The testimony in this record clearly shows that the actions of defendant’s employees and the precautions taken by them to protect Mrs. Wiley and its other customers from the danger of the presence of the oil on the floor meet the common-sense test to be applied in these cases, and show that they acted as any reasonably prudent persons would have acted under the same or similar circumstances.
The actions of defendant’s employees were prompt. No delay was encountered in the clean-up operations which were begun immediately, proceeded with in all dispatch, and completed in about 10 minutes. Immediately precautions to protect the customers were also undertaken. The gum cabinet was placed between the oil and the tobacco counter so as to form a block to the passageway through the danger area. Further, adequate and timely warnings were given to Mrs. Wiley. Whatever other precautions defendant’s employees could have taken, if any, have not been suggested. We can conceive of no other precautions that the employees, as reasonably prudent persons, could have taken. It appears that all precautions, short of absolute physical restraint of the customers, were taken.
Although this action is predominantly factual in character, in determining whether there was fault on the part of the defendant or its employees which constituted a proximate cause of plaintiff’s accident, the evidence must be measured by applicable statutory provisions and by rules well established in the jurisprudence of this State.
A fundamental rule is set forth in the Revised Civil Code. Art. 2315 declares:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. ‡ * * ” (Emphasis supplied.)
*222 Moreover, under Art. 2316 of the same authority, it is declared:
“Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.”
Thus, as a general rule and as a prerequisite to the recovery of damages, actionable negligence must be established against the alleged tort-feasor. For instance, in the slip-and-fall case of Peters v. Great Atlantic & Pacific Tea Co., 72 So.2d 562, 564 (La.App., 2d Cir. 1954), this court reviewed the jurisprudence applicable to actions of this character. There, we stated :
“Plaintiff’s cause of action arises from LSA-C.C. art. 2316, declaring persons are responsible for the damage occasioned by their negligence, imprudence or want of skill. Under this statute a store keeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passage ways in a reasonably safe condition for use in a manner consistent with the purpose of the premises.
“He must exercise the degree of care that would he exercised by an ordinary prudent man under similar circumstances. See: Ellington v. Walgreen Louisiana Co., Inc., La.App. 1949, 38 So. 2d 177; Knight v. Travelers Insurance Co., La.App.1947, 32 So.2d 508.
“His liability arises only when injuries are caused by his negligence; Bishop v. F. W. Woolworth & Co., La.App. 1942, 8 So.2d 701, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it should have been discovered and removed. Joynes v. Valloft & Dreaux, Inc., La.App. 1941, 1 So.2d 108.” (Emphasis supplied.)
See the authorities therein cited. See, also: Fish v. Aetna Casualty & Surety Company, 205 So.2d 187, 188-189 (La.App., 2d Cir. 1967 — Writs denied); Tucker v. Travelers Insurance Company, 160 So.2d 440, 442 (La.App., 2d Cir. 1954); Rideau v. National Food Stores of La., Inc., 230 So.2d 665, 667 (La.App., 3d Cir. 1970).
As also noted by this court in Wiley v. Sutphin, 108 So.2d 256, 260 (La.App., 2d Cir. 1958):

“Negligence is a want of ordinary or reasonable care, which should be exercised by a person of ordinary prudence under all the circumstances in view of the probable danger of injury; and ordinary, reasonable or due care is that degree of care, which, under the same or similar circumstances, would ordinarily or usually be exercised by, or might reasonably be expected from, an ordinarily prudent person.

"Under LSA-C.C. art. 2315 respecting liability for damages, liability is founded upon fault, and whether or not fault exists depends upon the facts and circumstances presented in each particular case. In the determination of the question of fault as respecting liability for damages, a common sense test is to be applied, that is, how would a reasonably prudent man have acted or what precautions would he have taken if faced with similar conditions and circumstances? The degree of care to be exercised must always be commensurate with the foreseeable danger confronting the alleged wrongdoer.” (Emphasis supplied.)
See the authorities therein cited.
Further, as observed in Tucker v. Travelers Insurance Company, supra (160 So.2d 440, 442):
“A defendant cannot be required to guard against an event which could not reasonably have been anticipated by a person of ordinary intelligence and pru *223 dence. Anderson v. London Guarantee & Accident Co., La.App.2d Cir., 1948, 36 So.2d 741.
“In the absence of fa^tlt or negligence, there cannot be, under our basic law, LSA-C.C. Art. 2315, any liability.” (Emphasis supplied.)
Moreover, as pointed out in Peters v. Great Atlantic & Pacific Tea Co., supra (72 So.2d 562, 564), the doctrine of res ipsa loquitur provides no comfort to plaintiffs, as the doctrine has no application to cases of this kind. In that connection, the court stated:
“It is the settled jurisprudence of this state that the doctrine of res ipsa loqui-tur is inapplicable to a storekeeper whose obligation toward his customer is the use of ordinary care to keep aisles, passage ways, floors and walks in a reasonably safe condition, and no presumption of fault of the store keeper arises from the mere fact of injury to a customer(Emphasis supplied.)
See the authorities therein cited.
From the evidence in this case, when considered and measured by the aforesaid principles of law, the conclusion is inescapable that the actions of defendant’s employees in clearing the oil from the store floor and in taking precautions to protect plaintiff and its other customers from harm were those of reasonably prudent persons. Accordingly, the fault or negligence charged to defendant has not been established to that degree of certainty as required by law. To the contrary, our conclusion is that defendant’s freedom ■from fault or actionable negligence has been satisfactorily established by a clear preponderance of evidence.
For the reasons assigned, the judgment appealed is affirmed at plaintiffs-appellants’ costs.
Affirmed.