393 So.2d 680 (1981)
Henry F. WILLIAMS
v.
WINN DIXIE OF LOUISIANA, INC.
No. 80-C-1384.
Supreme Court of Louisiana.
January 26, 1981.
*681 Dennis R. Whalen, Baton Rouge, for plaintiff-applicant.
Peter T. Dazzio, Watson, Blanche, Wilson & Posner, Baton Rouge, for defendant-respondent.
BLANCHE, Justice.
Plaintiff filed suit for damages arising out of injuries he allegedly received when he slipped and fell on some liquid in an aisle of one of defendant's grocery stores. The evidence adduced at trial indicates that a bottle of some liquid (probably vinegar) struck the floor of an aisle near the front of the store, broke, and spilled at least a portion of its contents onto the floor. Plaintiff slipped on the substance and fell to the floor, scraping his elbow and allegedly injuring his back.
The trial court found that the spilled substance created an unreasonably dangerous condition and that defendant owed plaintiff a duty to correct the condition or warn plaintiff of its existence. It further held that the risk of plaintiff's fall was within the ambit of that duty but concluded that defendant had not breached the duty. The court made a factual determination that there was a lapse of only one to three minutes between the time the liquid was spilled onto the floor and the time of plaintiff's fall and that an employee of defendant had been dispatched to clean up the spill and was on his way to the area with a mop when plaintiff fell. Because of these facts, the court held that defendant was in the process of taking reasonable action to satisfy its duty to correct the situation and that it had no duty to warn plaintiff of the danger. On appeal, the First Circuit Court of Appeal affirmed the trial court's findings of fact and its application of the law to the facts. That appellate court denied plaintiff's application for a rehearing. We granted plaintiff's application for a writ of certiorari to review the appellate court decision and now reverse that decision, remanding this case to the court of appeal for the following reasons.
The evidence reveals that on the evening of October 25, 1975, a bottle of liquid which defendant's employees testified was vinegar crashed to the floor of an aisle near the front of the store. The identity of the individual who dropped the bottle or caused it to break was never determined. The manager and assistant manager of the store were in the office at the time and heard the crash of the bottle breaking. According to the testimony of the manager and assistant manager, they could see the broken glass and spilled liquid from their vantage point in the office. (Apparently, the office was raised above floor level, allowing an occupant to look down over at least some of the remainder of the store.) The assistant manager called over the public address system for a particular worker to come to the aisle and clean up the spill. Before the worker did so, plaintiff slipped and fell in the liquid.
Three persons who were employed at defendant's store at the time of the accident testified as to the lapse of time between the bottle breaking and plaintiff falling. The assistant manager testified that a minute or two, at the most three minutes, passed between the time the bottle broke and plaintiff fell. The manager testified that the bottle had broken about one to two minutes before plaintiff fell. The person summoned to clean up the spill estimated that a time period of no more than two minutes elapsed from the time he heard the bottle break (from where he was working in the rear of the store), was told over the public address system to clean up the spill, retrieved the *682 mop from the rear of the store (the warehouse) and brought it up to the front aisle where the spill was located and where he saw plaintiff lying. Plaintiff testified that he did not know how long the liquid had been on the floor and that he did not hear any glass break while he was in the store. Plaintiff was only in the store to purchase one itema sack of potatoesand was on his way to the checkout counter when he slipped and fell.
Again, from the above testimony, the trial court found that the liquid had only been on the floor for 1 to 3 minutes and that defendant's employees were in the process of taking reasonable action to satisfy its duty to correct the situation. It found that there was not sufficient time for defendant to actually correct the problem and held that there was no duty on the part of defendant to warn plaintiff in the interim. We disagree with this holding.
The trial judge cited several decisions in support of his view that the duty a store owner owes to the patrons of its store is a duty to correct a dangerous situation or warn of it. Dillman v. Nobles, 351 So.2d 210 (La.App., 4th Cir. 1977); Harrington v. Kroger Co., Inc., 279 So.2d 814 (La.App., 2d Cir. 1973); Ellington v. Walgreen Louisiana Co., Inc., 38 So.2d 177 (La.App., 2d Cir. 1949). In its brief affirmance of the trial court's decision, the court of appeal cited Harrington, supra, and two decisions dealing with failure to discover a dangerous condition. The latter decisions are inapplicable to the facts of this case since the dangerous condition was immediately discovered by the instant defendant. Dillman, Harrington and Ellington do not hold that where the correction has not yet occurred but preparations are being made to correct the dangerous situation there is no duty to warn customers of that situation. We hold that such a duty to warn does exist.
We find that what is often considered an alternative duty to correct or warn where an unreasonably dangerous condition is found to exist on a defendant's premises had been stated as follows:
"The owner, occupant, or person in charge of property owes an invitee ...[1] the duty of exercising reasonable or ordinary care for his safety and is liable for injury resulting from breach of such duty. This duty includes that of exercising reasonable care to keep the premises in a reasonable condition or of warning invitees ... of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger." Foggin v. General Guaranty Ins. Co., 250 La. 347, 195 So.2d 636 (1967). (Footnote 1 added).
In other words, the duty is to keep the premises safe (via repair or correction of unsafe conditions if necessary) or to warn of the danger if an unsafe condition exists. A statement of alternative duty to warn or correct should not be distinguished from the above statement of duty and should not be taken to require anything other than actual correction or repair of a dangerous condition (not the preparation to make a correction) or, alternatively, a warning of the dangerous condition pending the actual correction.
The Third Circuit Court of Appeal recognized such a duty in Cline v. Kroger Co., Inc., 379 So.2d 1184 (La.App., 3d Cir. 1980). In that case, a bottle of liquid cleanser fell from a checkout counter, breaking and spilling on the floor of the checkout aisle. Plaintiff slipped and fell in the spill and was injured. The store employee at the checkout counter called over the public address system for a cleanup, but remained behind the register and did not stand near the spill to warn customers of the danger. The court held that this employee "had a duty at the time to remain watchful for any *683 approach to her aisle and prevent persons from entering it." Since she had not done so, the court held that defendant had breached its duty to plaintiff.
In setting out the above duty, we emphasize that after the initial discovery of the dangerous condition, the store owner has the burden to actually correct it or to warn of the danger while corrective procedures are taken, if such a warning is reasonably possible. For example, in Harrington v. Kroger Co., Inc., supra, the court correctly found that the spill had occurred only seconds before the fall and defendant had no opportunity to clean the spill or warn of its danger. The facts in Harrington are very close to those of the instant case. In Harrington, "an employee in the office near the express checkout counter, testified she heard the bottle drop, called on the intercom for a porter to clean it up, and saw plaintiff fallall within a matter of seconds." The court of appeal in that case expressly approved the lower court's conclusion of fact that the injured plaintiff fell almost immediately after the breakage of the glass and before the store employees had an opportunity to remedy the situation or warn plaintiff of the danger.
We find that employees of defendant did have an opportunity to warn plaintiff of the danger. Both the manager and assistant manager of this particular store of defendant's testified that they heard the glass bottle break and could see the breakage in a front aisle from their location in the store's office near the front aisle. When questioned as to why they did not post someone to warn plaintiff pending the arrival of a worker to clean the spill, the assistant manager stated that he had notified someone to clean the spill, there was not much traffic in the store and one could see the vinegar. In response to the same inquiry, the manager stated that he really did not know why the assistant manager did not stand at the spill to warn customers, and speculated that he may have had customers at the office. Neither of these witnesses indicated that the justification was that there was no time for a warning from them prior to the fall, although they did testify that they were busy filling out Saturday night reports in their office at the time the bottle was broken.
We find that the court of appeal was manifestly erroneous in affirming the lower court decision. We hold that defendant did have a duty to warn plaintiff of the unreasonably dangerous condition of its aisle pending the correction of the condition, and that defendant had a reasonable opportunity to do so. Even accepting the estimation by defendant's employees of the time lapse between the spill and the fall as 1 to 3 minutes, considering the fact that defendant employees saw the spill and were in the same front area of the building as the spill, it was reasonably possible for them to warn plaintiff during this 1 to 3 minute period while awaiting the arrival of a person to clean up the spill.
Defendant argues that should this Court find negligence on its part, plaintiff should be barred from recovery because of alleged contributory negligence on his part. Defendant contends that plaintiff had been drinking alcoholic beverages and did not notice and avoid the spill as he should have because of this reason or because plaintiff was otherwise inattentive. We find that defendant has not met his burden of proving either contention.
The manager, assistant manager and worker who cleaned up the spill all testified that plaintiff's breath smelled of alcohol. The assistant manager also testified that plaintiff mumbled, and the manager stated that plaintiff could really not answer his questions in order to fill out the accident form and had trouble walking. Plaintiff on the other hand, testified that he had not been drinking on that day. He was sure he had not been drinking in 1975 since he had diabetes, was taking medicine and was afraid to drink. The manager and assistant manager testified that they were not familiar with the smell of a diabetic's "acetone breath". Plaintiff's wife testified that plaintiff had not been drinking prior to the time he left for the grocery store on the day of the accident and did not act or smell as if *684 he had been drinking when he returned. The above evidence does not establish that plaintiff had been drinking and that his consumption of alcohol caused him to slip and fall on the spill. The additional testimony that plaintiff "mumbled", "had difficulty walking", and "could not answer questions" does not change this conclusion. The witnesses did not elaborate at all on these simple statements, and any difficulties plaintiff may have experienced could be attributed to his fall.
Defendant alternatively contends that plaintiff was negligent in failing to hear the bottle breaking and/or observe or smell the spill, and walk around it. However, defendant did not prove that plaintiff was in the store when the bottle broke. Further, plaintiff testified he had just come around a corner and walked a few steps before he slipped in the spill. He testified he was looking for an open checkout lane at the time of the fall. Defendant claims that the spill was small (testimony indicates about 12 inches in diameter) and that plaintiff could have walked around it. However, the same store employee who testified as to the size of the spill testified that it was very close to the shelf of the aisle in question and was, in fact, seeping under the shelf. This evidence shows that a small spill located on the side of an aisle a few steps away from the corner plaintiff had rounded may have been difficult to observe. Also, although defendant's employees testified the spilled liquid was vinegar and that you could smell it, plaintiff testified that he did not, in fact, smell vinegar and did not know what type of liquid he had fallen in. Under these facts, defendant has not proved plaintiff was contributorily negligent in failing to notice and avoid the spill.
For the above reasons we reverse the court of appeal finding that defendant was not negligent. We conclude that defendant was negligent, that its negligence caused plaintiff to fall, and that plaintiff was not contributorily negligent. We remand to the court of appeal for a determination of any damages due plaintiff for injuries he may have sustained as a result of this accident.
REVERSED AND REMANDED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I agree with the courts below that defendant acted reasonably under the circumstances. Accordingly, I respectfully dissent.
NOTES
[1] We recognize that the trespasser-licensee-invitee classifications have been previously disapproved by this Court. The cited statement of duty is otherwise accurate with regard to the particular plaintiff and defendant-property owner in the instant case. See Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La. 1976).