DOMENGEAUX, Judge.
In this slip and fall case, close questions of negligence and contributory negligence were decided by the trial court in favor of the plaintiff, Cleveland Lewis. Judgment was rendered against the defendant store owner, Piggly-Wiggly of Ferriday, Inc. and its insurer, Commercial Union Insurance Company, in the amount of $1,670.00 with legal interest from date of judicial demand. The amount represents an award of $1,500.00 for pain, suffering, disability, etc., $162.00 for doctor bills, and $18.00 for hospital costs.
Defendants have appealed contending that the trial judge erroneously decided the issues of negligence and contributory negligence against them. Plaintiff has answered the appeal seeking an increase in the amount of damages.
Using the rationale of Williams v. Winn Dixie of Louisiana, Inc., 393 So.2d 680 (La.1981), and Cline v. Kroger Company, Inc., 379 So.2d 1184 (La.App. 3rd Cir. 1980), we affirm the lower courts findings on the issues of negligence and contributory negligence. We also affirm the award, since the record does not establish that the trial court abused its discretion.
FACTS
The trial judge set forth his findings in his reasons for judgment. We find those factual conclusions well-supported by the evidence. We adopt these conclusions as our own and quote them as follows:
“The Defendant operates the Piggly Wiggly store in Ferriday. On the morning of 23 May 1979, sometime between 8 and 9 o’clock a.m., and shortly before the Plaintiff entered the store, (not more than ten minutes), a customer had dropped a jar of salad dressing in the open area of the store in front of Gloria Loyd’s check-out aisle. This was a slow time of the day and there were very few customers in the store. There were only three employees present. The Manager, [Vernon] White, was at the first checkout aisle on the left as you enter the store and Gloria Loyd was in the next aisle. A bag boy, [Steve] Tyson, was also present.
There were no employees at the other [two] check-out aisles which were open and unobstructed. I have accepted the location of the spilled salad dressing as that shown on the exhibit D-2 marked *97 with an X[1]. have also accepted as fact the testimony of Gloria Loyd that the spill was in the open and easily visible.
When the customer dropped the salad dressing, she was approaching Loyd’s aisle for the purpose of checking out. The spill was immediately observed by both Loyd and White. The other employee, a bag boy, Tyson, was immediately ordered to proceed to the rear of the store and obtain a mop and a pail to clean up the spill. At the time of the spill Tyson had been taking a customer’s groceries out the front and immediately upon his return he was given these instructions. This was a very short time after the actual spills. At this time the Plaintiff had not as yet entered the store.
When Tyson had departed to obtain the mop and pail, the Plaintiff then entered the store through one of the vacant check-out aisles.[2] Both White and Loyd had the spill within their immediate observation since it was very close to each, and both were of the opinion that they could observe the approach of any customers in sufficient time to warn them of the spill. Both felt that they were complying with the store policy with respect to spills, in that the prompt steps were taken to clean it up, and they were present to warn customers of the danger.
Neither White nor Loyd saw the Plaintiff until he was at the site of the spill and both were in the process of warning him when he fell. Had Plaintiff approached from any of the areas of the store where the merchandise was displayed, both White and Loyd would have been able to see him in sufficient time to warn him, but he came through one of the vacant aisles and this was apparently the only direction from which both White and Loyd had some restriction of vision. I have accepted as fact that White had a slightly better angle of view that Loyd and he was in the process of stepping out of his check-out aisle into Loyd’s aisle to warn Lewis at the time of the spill. Loyd who saw him possibly a fraction of a second later than White was also in the process of warning Lewis at the time of the spill.
Plaintiff slipped, immediately got up, advised Loyd that he was not injured, checked out at Loyd’s stand (I have accepted as fact that Plaintiff checked out at Loyd’s aisle rather than White’s as Plaintiff testified) and then left the store. He came back about an hour later complaining of a back injury.”
NEGLIGENCE
The plaintiff proved that: there was a broken bottle of salad dressing on the floor between Mrs. Lloyd’s check-out aisle and the merchandise area of the store; he did not see the dressing; he stepped into it, fell, and was injured as a result. At this point the burden shifted to the store owner to rebut the inference of negligence on its part. Cline v. Kroger Company, Inc., 379 So.2d 1184 (La.App. 3rd Cir. 1980). This it has not done.
The evidence clearly established that Mr. White, the manager, and Mrs. Lloyd, a cashier, saw or heard the breakage occur and could plainly see the spill from their respective check-out stands. A bag-boy was instructed to get a mop and clean the area of the spill. Meanwhile Mr. White and Mrs. Lloyd, while still at their check-out stands, watched for customers who might be approaching the spill from the merchandise area of the store.
Unobserved by either Mr. White or Mrs. Lloyd, plaintiff walked up another check *98 out aisle, turned sharply to his left and reached the spill in several steps. Before either Mr. White or Mrs. Lloyd could warn him, plaintiff slipped in the dressing and fell.
After the initial discovery of the dangerous condition, the store owner has the burden to actually correct it or to warn of the danger while corrective procedures are being taken, if such a warning is reasonably possible. Williams v. Winn Dixie of Louisiana, Inc., 393 So.2d 680 (La.1981).
We hold that the storeowner, through its employees, did have a reasonable opportunity to warn the plaintiff of the unreasonably dangerous condition of its floor and was negligent in failing to do so. The broken bottle of salad dressing was on the floor at least five minutes and perhaps as long as ten minutes before plaintiff slipped. Two of the defendant’s employees, Mr. White and Mrs. Lloyd, saw or heard the spill and were just a few feet away from the spill during the entire time the dressing was the floor. Neither employee bothered to stand at the spill to warn customers, even though the evidence shows that one employee or the other was not busy during that time. The only reason neither employee warned plaintiff in time was because he approached the area by walking through another check-out aisle while both employees were on the lookout for customers approaching from the merchandise area of the store.
The fact that neither employee expected plaintiff to approach the area of the spill by walking through an unused checkout aisle does not exculpate the defendant from negligence. The evidence showed here, as it did in Cline v. Kroger Company, Inc., supra, that
“It was not uncommon for customers to enter the merchandise area of the store through the check-out aisles.” (379 So.2d at 1186).
We held in Cline that the storeowner’s employee had a duty, after discovering the spill, to remain watchful for any approach to her aisle and prevent persons from entering it. Since she did not prevent Cline from passing through her aisle to the merchandise area of the store, the defendant failed in proving its lack of negligence. The result is the same here.
Williams, supra, lends additional support to our holding. Under a very similar set of facts, the Supreme Court there said:
“... We hold that defendant did have a duty to warn plaintiff of the unreasonably dangerous condition of its aisle pending the correction of the condition, and that defendant had a reasonable opportunity to do so. Even accepting the estimation by defendant’s employees of the time lapse between the spill and the fall as 1 to 3 minutes, considering the fact that defendant employees saw the spill and were in the same front area of the building as the spill, it was reasonably possible for them to warn plaintiff during this 1 to 3 minute period while awaiting the arrival of a person to clean up the spill.” (Emphasis added). (393 So.2d at 683).
In the instant case, the time lapse between the spill and fall was 5 to 10 minutes, the defendant’s employees saw the spill and were in the immediate vicinity of the spill, and it was not uncommon for customers to walk through the check-out aisles in order to reach the merchandise area of the store, a fact defendant’s employees should have known, since they were long-time employees at this store. Under this set of facts, we hold that it was reasonably possible for the employees to warn plaintiff during the 5 to 10 minute period while awaiting the arrival of the bag-boy to clean up the spill.
CONTRIBUTORY NEGLIGENCE
The trial court resolved this issue in the following manner:
“. .. I have accepted Plaintiff’s statement that he was preparing to purchase cigarettes after having purchased a bag of pinto beans, and was not looking at the floor at the time of the spill. I do not accept his testimony as to the exact location of the spill nor the fact that he checked out at White’s aisle rather than Loyd’s. Nevertheless, I do not find him *99 contributory negligent in that I do not feel that the customers in a store of this nature are required to observe the floor under all conditions. It is entirely reasonable to expect that a customer would have his attention on one of the displays such as cigarettes and other items around the check-out aisle rather than having his attention fixed on the floor. Defendant makes very strong arguments to the contrary in this case, but as stated, I have resolved this question of negligence in favor of the Plaintiff.” (Emphasis added).
The defendants have failed to establish by a preponderance of the evidence that plaintiff was contributory negligent. Although the spill, orange in color, was out in the open and readily observable against the light-colored floor to anyone who may have been observing the floor, the trial judge accepted as true plaintiff’s testimony that his attention was diverted to the cigarette display because he wanted to buy some cigarettes. (After his fall, plaintiff arose, selected a pack of cigarettes, purchased both the beans and the cigarettes, then left the store.) Furthermore, the plaintiff had just come around a corner and walked a very few steps before he slipped in the spill, a fact which also existed in Williams, supra, wherein the plaintiff was found not contrib-utorily negligent.
Viewing the evidence as a whole, we cannot conclude that the district court erred in concluding that plaintiff was not contribu-torily negligent in failing to observe the spill because his attention was directed at a cigarette display instead of the floor.
DAMAGES
The trial court concluded, with respect to damages:
“On question of quantum, the evidence indicates that the fall suffered by Plaintiff was of a relatively minor nature. The medical evidence indicated that there was no damage suffered to either Plaintiff’s elbow or his low back which was visible by x-rays. The attending physician felt that Plaintiff had recovered from the injuries on 30th of July, 1979. However a year later, and shortly prior to this litigation, the physician did state that there was some degree of disability, although this was not specified and no objective evidence was submitted to support disability or pain.
Consideration of the evidence, and the observation of the witnesses, including Plaintiff, on the question of the extent of the injury, justifies an award of $1,500.00 for pain, suffering, disability, etc. Plaintiff is also awarded net hospital costs in the amount of $18.00 and doctor bills in the amount of $162.00.”
Our review of the record convinces us that the trial court did not abuse its discretion in awarding general damages of $1,500.00. The fall plaintiff suffered in defendant’s store was of a relatively minor nature, as the trial judge found. The record indicates that several of plaintiff’s complaints possibly relate to or were caused by injuries or accidents other than the one which occurred in defendant’s store.
We note in passing that in Cline, supra, another panel of this court affirmed a very similar award for a similar back injury which was symptomatic for three or four months, a longer period of time than here.
DECREE
For the above and foregoing reasons the judgment of the district court is affirmed. All costs are assessed against plaintiff.
AFFIRMED.

. Footnote by the Court of Appeal. Exhibit D-2 was a photograph depicting the area in which the spill occurred. The “X” or location of the spill was two or three feet from Mrs. Lloyd’s check-out counter between the checkout area and the merchandise area of the store.

. Footnote by the Court of Appeal. The trial judge inadvertently omitted from his reasons the established fact that after plaintiff entered the store, he walked to his right then cut left to go down the first food aisle to get a bag of pinto beans. After he obtained the beans, he retraced his steps to the front of the store and then passed through one of the vacant checkout aisles.