493 So.2d 789 (1986)
Orlan L. LEE, Sr., Plaintiff-Appellant,
v.
GREAT SOUTHWEST FIRE INSURANCE COMPANY and Rally Car Wash, Inc., Defendants-Appellees.
No. 17927-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
*791 Tyler & Johnson by Tommy J. Johnson, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendants-appellees.
Before HALL, C.J., and FRED W. JONES, Jr. and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff, Orlan L. Lee, Sr., sued defendants, Rally Car Wash, Inc. and its insurer Great Southwest Fire Insurance Company, for damages allegedly due to a fall he suffered while washing his car at a Rally Car Wash facility. After trial, in written reasons for judgment, the district court found that plaintiff's injuries were caused solely by his own negligence; therefore, he was not entitled to recover damages from defendant. Judgment was rendered in favor of defendant.
Plaintiff's appeal of the trial court's judgment raises the following issues:
(1) the negligence of defendant,
(2) the contributory negligence of the plaintiff,
(3) apportionment of negligence, and
(4) damages.
We find that the district court was clearly wrong in holding that plaintiff's negligence was the sole cause of the accident. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We reverse, apportion negligence equally to defendant and plaintiff, and award damages accordingly.

FACTS
On January 19, 1984, at approximately 3:00 p.m. plaintiff went to the Rally Car Wash (hereinafter Rally) located on West 70th Street in Shreveport, Louisiana in order to wash his automobile. The weather that winter had been unusually harsh and the climatological data revealed the maximum temperature on that date was 33°, with an average temperature of 26°. The day was clear and the sun was shining. There had been an ice storm several days earlier and some ice still remained along the curbs of the streets.
The self-service car wash is open twenty-four hours a day and consists of covered, open bay areas. The floor of the bay is slanted toward a center drain. The customer inserts coins and washes his own automobile with a movable, spraying wand. An attendant checks and cleans the area approximately twice a day, once in the morning and once in the afternoon, but there is no regular inspection schedule and there is no attendant on duty at all times. The winter is a busy season for the car wash. This particular winter Rally had encountered problems with ice formation in the bays. If ice was found, it was cleaned out or the bay was blocked off.
On the date of the accident, plaintiff, a 65 year old, semi-retired truck driver, dropped his wife off at the grocery store and proceeded to the car wash. Plaintiff was familiar with the car wash, having used it on previous occasions. Plaintiff observed some ice along the curbs of the streets which had remained from an ice storm several days earlier. There were other customers present washing their automobiles at that time. Upon arriving at the car wash, plaintiff left his automobile to obtain change. Plaintiff inserted his coins and began to wash his car, beginning with the right rear of the car. As plaintiff rounded the left front bumper of his car, he slipped on ice and fell to the ground, injuring his back.
According to plaintiff, the ice had formed in a clear, thin layer approximately three to three and a half feet in diameter. Plaintiff did not see the ice prior to his fall due to the steam rising from the wand he was using to wash his car. Plaintiff suffered immediate pain in his lower back after the fall. A medical examination the following day indicated that the plaintiff had fractured his sacrum, which connects the spine and tailbone.

*792 NEGLIGENCE OF DEFENDANT
The following inquiries must be made in order to determine legal responsibility in tort claims: (1) whether the conduct of which the plaintiff complains was a cause-in-fact of the harm; (2) whether there was a duty on the part of the defendant to protect against the risk involved; (3) whether there was a breach of that duty. Harris v. Pizza Hut of Louisiana, 455 So.2d 1364 (La.1984); Martin v. Piggly Wiggly Corp., 469 So.2d 1057 (La.App. 2d Cir.1985).
Conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Thomas v. Missouri Pacific Railroad, 466 So.2d 1280 (La. 1985); Ward v. Louisiana and Arkansas Railway, 451 So.2d 597 (La.App. 2d Cir. 1984). In other words, it is an act or failure to act without which the accident would not have occurred. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Ward v. Louisiana and Arkansas Railway, supra. It is clear that the failure of Rally to discover and remove or warn plaintiff of the ice located in the bay was a substantial factor in bringing about plaintiff's fall and injury. Therefore, Rally's inaction was a cause-in-fact of the harm suffered by plaintiff.
The proprietor of a business establishment owes a duty to his patrons to exercise reasonable care to keep the premises in a reasonably safe condition. Rodriguez v. New Orleans Public Service, 400 So.2d 884 (La.1981); Williams v. Winn Dixie of Louisiana, 393 So.2d 680 (La. 1981). This duty includes the taking of reasonable, protective measures to keep travelled areas free of foreign substances. Kavlich v. Kramer, 315 So.2d 282 (La. 1975); Sanders v. Stutes, 400 So.2d 1159 (La.App. 1st Cir.1981). This duty also includes warning persons of known dangers. Williams v. Winn Dixie of Louisiana, supra; Rodriguez v. New Orleans Public Service, supra. However, the proprietor is not the insurer of the safety of the patrons. Gatti v. Worldwide Health Studios of Lake Charles, 323 So.2d 819 (La.App. 2d Cir.1975); Sanders v. Stutes, supra.
The duty of Rally to provide reasonably safe premises for its patrons encompasses the risk that a patron would slip and fall on ice because his attention would be directed at the car, not the floor, and his vision would be obscured by spray and steam. Rally had encountered problems with ice in the bays of the car wash in January of 1984, but failed to implement scheduled inspections for ice or to place warning signs in the bays. The only precautionary measure taken by Rally was to block off the bay by pulling the hose across it if ice was discovered by the clean-up man. Rally's failure to adequately inspect the premises on the day of the accident and failure to place warning signs or take other precautions was a breach of the duty owed to plaintiff as a patron of the car wash. Williams v. Winn Dixie of Louisiana, supra; Brown v. Winn-Dixie Louisiana, 452 So.2d 685 (La.1984).

CONTRIBUTORY NEGLIGENCE OF PLAINTIFF
Negligence is a failure to observe or do something one ought to have observed and done and would have done or noticed with ordinary care. Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La. 1981); Siau v. Rapides Parish School Board, 264 So.2d 372 (La.App. 3d Cir.1972), writ denied, 262 La. 1148, 266 So.2d 440 (1972). "Contributory negligence is a matter of fact to be determined in the light of the circumstances of each case.... A person is not required to exercise the utmost caution at each moment to avoid every hazard of which he was ever aware." Soileau v. South Central Bell Telephone Co., supra, at p. 184.
On the day of the fall, plaintiff had observed ice remaining alongside the streets as a result of an ice storm several days earlier and believed the temperature to be around 33° or 34°. Although it was a sunny afternoon, plaintiff pulled his car into a bay located in the shade. Under the *793 circumstances, plaintiff should have been aware of the possibility that ice might form in the car wash bay. Plaintiff's failure to notice a three to three and one-half foot patch of ice directly in front of his left bumper when driving into the bay and again when rounding the front end of the car, was a failure to exercise ordinary care under the existing conditions. Plaintiff was contributorily negligent.

APPORTIONMENT OF NEGLIGENCE
Contributory negligence is no longer a bar to plaintiff's recovery. Where contributory negligence applies, LSA-C.C. Art. 2323 operates to reduce the claimant's recoverable damages in proportion to the degree or percentage of negligence attributable to him. Thomas v. Missouri Pacific Railroad, supra.
In Watson v. State Farm Fire & Cas. Co., 469 So.2d 967 (La.1985), the Supreme Court cited the following provision of the Uniform Comparative Fault Act (2)(B) when setting forth guidelines as to the apportionment of fault in cases involving comparative negligence:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
The Supreme Court went on to state that various factors, including the following, may influence the degree of fault assigned to the parties involved: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, or (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. The relationship between the negligent conduct and the harm to the plaintiff is a consideration in determining the relative fault of the parties.
Our consideration of these factors suggests that the fault of the parties is substantially equal. Neither party was aware that the sheet of ice had formed in the bay, but Rally knew that ice had formed in some of the bays during the period of cold weather and plaintiff should have known of the possible presence of ice. Although Rally's failure to adequately inspect and to warn was a cause of the harm to the plaintiff, the plaintiff's failure to observe the ice and his stepping on the ice had a more direct relationship to the harm. How long the ice had been there is unknown and plaintiff had the last opportunity to avoid the harm. There were, however, extenuating circumstances in plaintiff's favor since his attention was necessarily diverted by the task of washing his car, the activity which defendant's customers were invited and required to perform.
After weighing the factors discussed above, we apportion fault at 50% to Rally and 50% to plaintiff.

DAMAGES
Although plaintiff presented evidence at trial concerning the damages which he suffered, the trial judge's determination eliminated the necessity of calculating and awarding damages. Because we have an adequate record concerning plaintiff's damages before us, we will make an assessment of damages due to plaintiff. LSA-C. C.P. Art. 2164.
In making an initial award of damages at the appellate level, we are not limited to an award of either the highest or lowest amount we would affirm. Instead, we set the award in an amount which is just for the damages revealed by the record. Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1183 (La.1982); Wall v. American Employers Insurance Co., 377 So.2d 369 (La.App. 2d Cir.1979), aff'd, 386 So.2d 79 (La.1980).
Plaintiff was 65 years old at the time of the accident. He had worked full-time as a truck driver until he retired in 1979. Subsequently, he was employed as a truck driver on a part-time basis and *794 earned an average annual income of $7500.00.
Immediately after the accident, plaintiff drove home with pain in his lower back. After lying down for a while, he drove to pick up his wife and helped her unload the groceries before he went back to bed. The next day plaintiff went to Med-Help and was x-rayed; his injury was diagnosed as a nondisplaced fracture of the sacrum. Plaintiff received pain medication which, when taken, did not give him full relief from the pain.
On January 31, plaintiff saw Dr. Austin Gleason, an orthopedic doctor, who diagnosed the injury as a fracture of the sacrum and acute back strain with a pre-existing condition of spondylosis, which is a severe arthritis of the lumbar spine. Dr. Gleason recommended a conservative form of treatment including walking up to two miles a day, exercising the lower back, avoiding prolonged sitting, and taking pain and anti-inflammatory medication. In May of 1984, plaintiff was released from Dr. Gleason's care with a 5% partial permanent disability of the body as a whole. At this time Dr. Gleason advised plaintiff that he would have to live with periodic back pain for the rest of his life. At no time was plaintiff hospitalized.
Approximately three weeks prior to trial, plaintiff returned to Dr. Gleason. Even though he had been exercising and avoiding prolonged standing or sitting, plaintiff complained of lower back pain and weakness in his legs. Further tests and x-rays revealed that plaintiff is presently suffering from stenosis, a narrowing of the spinal canal, which causes damage to the nerves of the lower back. Dr. Gleason believed the nerve damage and the aggravation of the spondylosis was caused by plaintiff's fall.
After the accident, plaintiff experienced throbbing pain in his lower back for at least two months. Periodically, plaintiff's back flares up and causes him discomfort. Plaintiff is unable to bend, stoop, and twist like he did before the accident. Furthermore, any lengthy standing or sitting causes problems. He also experiences frequent stiffness in his back. Prior to the accident, plaintiff was very active and would exercise, wash windows, clean behind appliances, perform yard work, and work on cars. Presently, defendant does none of these things and only drives his wife to the grocery store. Sometimes he must stay in bed all day. Plaintiff cannot resume his part-time job as a truck driver because he cannot sit for any length of time. Due to the cost of medical treatment and rehabilitation, plaintiff cannot afford as high a standard of living as he did before the accident. He has also been worried and depressed. Under the circumstances, we think an award of $30,000.00 is appropriate for past and future pain and suffering, disability, and mental anguish.
Plaintiff was unemployed at the time of the accident. However, his unemployment was voluntary for reasons involving the social security benefits which he received; plaintiff intended to resume his job with the same employer, who was willing to rehire him, in early 1984. Based on this information, plaintiff's employer's time sheets, and plaintiff's W-2 forms and income tax returns for 1982 and 1983, plaintiff's economist, Dr. Harju, calculated plaintiff's lost wages at $10,125.00. Dr. Harju calculated the present value of plaintiff's future lost wages in the amount of $21,026.00 based on an established work life expectancy of three years. Lost wages, past and future, total $31,151.00.
Past medical expenses in the amount of $1,639.00 were substantiated by medical bills. However, the possibility of future surgery is too speculative to justify an award.
Plaintiff's damages total $62,790.00, to be reduced by the 50% negligence attributable to him.

DECREE
The judgment of the district court is reversed and set aside. Judgment is rendered in favor of plaintiff, Orlan L. Lee, Sr., and against defendants, Rally Car Wash and its insurer, Great Southwest Fire *795 Insurance Company, in solido, in the amount of $31,395.00, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding, including the cost of appeal. Expert witness fees are fixed in the amount of $1,000.00 for Dr. Harju and $250.00 for Dr. Gleason, to be assessed as costs. LSA-R.S. 13:3666.
REVERSED AND RENDERED.